SCHAFF v. HOLMES. (No. 1521.)

(Court of Civil Appeals of Texas. Amarillo.
Oct. 22, 1919.)

1. TRIAL ☞251(3) — INSTRUCTION ON ISSUE
NOT MADE BY PLEADING ERRONEOUS.

In an action for damage to a shipment of
cattle, an instruction on detention of cattle in
cars without food, water, or rest was error,
where there was no such issue raised by the
pleadings.

2. EVIDENCE ☞489—EVIDENCE OF LOSS IN
MARKET VALUE TO LIVE STOCK SHIPPER.

In an action against a carrier for damages
for delay in shipment of cattle, where the is-
sue was as to market on the day of arrival and
day when they should have arrived, and wit-
ness stated he knew, he could state the differ-
ence.

3. APPEAL AND ERROR ☞742(4)—STATEMENT
FOLLOWING ASSIGNMENT NOT GOOD WITHOUT
EVIDENCE ON QUESTION.

In an action for injuries to shipment of
live stock, an assignment of error that account
sales were admitted in evidence without prelim-
inary proof need not be considered, where
statement following assignment does not show
what evidence was given in reference to ac-
count sales, and bill of exceptions is in same
condition.

4. EVIDENCE ☞318(1) — ACCOUNT OF SALES
HEARSAY EVIDENCE OF INJURY TO CATTLE IN
TRANSIT.

In an action against a carrier for damages
resulting from delay in shipment of live stock,
the account sales was inadmissible as hearsay;
the entries and declarations therein being those
of living third parties, and not of witness, and
there being no testimony to their being made in
professional, official, or other duty.

Appeal from Baylor County Court; Nat G.
Mitchell, Judge.

Suit by H. E. Holmes against the Wichita
Valley Railway Company and C. E. Schaff,
receiver. From judgment against him, the
defendant receiver appeals. Reversed and
remanded as to the receiver, and affirmed as
to the other defendant.

Martin, Bullington, Boone & Humphrey, of
Wichita Falls, and Dickson, Kenan & New-
ton, of Seymour, for appellant.
Bert King, of Wichita Falls, for appellee.

HUFF, C. J. Holmes sued in the county
court of Baylor county the Wichita Valley
Railway Company, C. E. Schaff, as receiver of
the Missouri, Kansas & Texas Railway Com-
pany and the Missouri, Kansas & Texas Rail-
way Company of Texas, for damages to a
shipment of cattle from Bomarton, Baylor
county, Tex., to Kansas City, Mo. The negli-

gence charged was a delay of 24 hours over
the schedule or usual time for the shipment
and the negligent and rough handling of the
cars, so that the cattle were damaged and in-
jured. There is no allegation that the appel-
lant refused to unload, feed, water, and rest
the cattle, as required by the statute. Upon
the verdict of the jury in answer to special
issues the court rendered against Schaff, re-
ceiver, $195, and the jury found nothing
against the Wichita Valley Railroad Com-
pany, and no judgment was entered against
it.

The first assignment will not be considered
over appellee's objection, in that the assign-
ment in the brief is not a copy of the assign-
ment filed in the court below, but a recon-
structed assignment. See Schaff v. Fancher
et al., No. 1520, 215 S. W. 861, handed down
by this court.

[1] The second assignment urges there was
error in giving appellee's requested charge,
which instructed the jury that if they found
"that the cattle in the shipment in question
in this case were held in the cars for an un-
reasonable length of time without being un-
loaded for feed and water and rest, and that
such act, if any, was due to the negligence of
defendants," and that by reason thereof the
cattle sustained injury, they would find for
plaintiff such damages by reason of such neg-
ligence in respect to any of the matters sub-
mitted in the issues submitted by the court.
The objection urged to giving the charge was
because there was no pleading justifying or
warranting such charge. As stated above,
there was no allegation charging a failure to
unload for feed, water, and rest. While ap-
pellant does not assert error in submitting spe-
cial issues on this point, we find that the ap-
pellees requested such issues, and the court
asked the jury if the appellants kept the cat-
tle on the cars for a longer period than 28
hours without unloading for feed, water, and
rest, which the jury answered in the affirma-
tive, and also if the appellants kept the cat-
tle in the cars without unloading, etc., for a
longer period than 36 hours. If so, how long
in hours? The jury answered, "Yes, six
hours." The pleadings presented no such
issues, and it was error to submit them. We
are unable to say this charge did not in-
fluence the jury in finding damages and the
amount thereof. The charge should not have
been given, nor the issues submitted as above
pointed out under the issues made by the
pleadings.

[2] The third assignment is not properly
briefed, and should be disregarded. However,
the answer of the witness to the interroga-
tory as to the general condition of the market
in the latter part of the week and the reason
therefor perhaps was immaterial. The issue
was: What was the market on the days in-
quired about? The witness stated he knew,

and we think he could give the difference. The objection that he does not there state what market he was referring to, whether New York, Chicago, or somewhere else, we think not well taken. The witness shows what market he was buying on, and where and when the cattle were purchased. At this place, perhaps we should state the market value of cattle, etc., has to be ascertained by inference and not by direct testimony. The case was not fully developed. The assignment does not, however, present such error as would require a reversal.

[3] The fourth assignment is to the action of the court in permitting the introduction of the account sales, as evidence, which was attached to the deposition of Le Bow, on the ground it was not shown to be a true and correct account of the actual facts as they existed, except as to the weight of the cattle and to all other portions thereof objections were urged. The account sales shows and gives the names of the purchasers, the kind of cattle, and the number, the weight, price per hundred, and the total amount. The objection appears also to apply to the unloading certificate, which gives the car numbers and the initials, the weight of the car, the rate, amount of freight, freight charges, yardage, pounds of hay, commission on sales, etc.

[4] Under the statement following the assignment we might assume the trial court found that the necessary preliminary proof was made for the introduction of the account sales, and the unloading certificate. As the statement does not show what the evidence was with reference to keeping the account or entering it upon the books, or in making out the account sales, or whether there was any testimony as to its correctness, and the bill of exception is in the same condition, there is nothing shown in the statement or the bill of exception other than the account sales and the objection made. But as we have concluded to reverse the case under assignment No. 2, we will give our views as to the admissibility of the account. The witness C. L. Le Bow, was the cattle salesman, who sold the cattle as an employé of the commission company. He does not testify as to the grades of the cattle, number, the price for which they sold or their market value, or any other item shown in the two instruments, the account sales and unloading certificate. Appellee introduces the account sales upon the following predicate taken from Le Bow's testimony:

"As requested, I am attaching a copy of the account sales (marked Exhibit A, by the notary for .identification), covering this shipment also unloading certificate (marked Exhibit B by the notary for identification), showing the time these cattle were unloaded. The copy of the account sales attached is a true and correct copy, and shows the correct weights of the cattle. The said copy of the account sales attached was taken from the books of the Na-

tional Live Stock Commission Company, that are kept in the regular course of the business of selling cattle. The entries made on the account sales were made by one of our bookkeepers, and it is our custom to have such entries made directly after, and from the data furnished by the weighmaster. This account sales and the record hereto attached was handled every way in the usual manner of our company."

This is all the evidence as to the correctness of the account. The account sales, as will be seen from the evidence above, was inadmissible, and is in that class of cases holding that it is hearsay. Railway Co. v. Startz, 97 Tex. 167, 77 S. W. 1; Railway Co. v. Cauble, 41 Tex. Civ. App. 348, 91 S. W. 244; Railway Co. v. Leggett, 99 S. W. 176; Id., 86 S. W. 1066; Railway Co. v. Curtis, 190 S. W. 857; Texas Glass Co. v. Reese, 187 S. W. 723; Randle v. Barden, 164 S. W. 1063. The evidence introduced does not fall under the shop book rule. But the account sales, in cases of this kind, falls under the exception, admitting entries made by third parties unconnected with the controversy. The rule, or the exception to the hearsay rule, apparently is that entries and declarations of third parties made in books, minutes or memoranda in writing in the usual course of business and in the discharge of professional, official, or other duty, and made at or about the time when the fact they record took place, are admissible on proper preliminary proof after the death of the person who made the entry. Elliott on Evidence, vol. 1, §§ 479, 480, et seq.; Heidenheimer v. Johnson, 76 Tex. 200, 13 S. W. 46. However, there are jurisdictions which hold that entries are admissible when the entrant is absent from the jurisdiction, but in some jurisdictions—and we believe in this state—when the person making the entry is still living and such entries have all the requisites except the death of the declarant, and in addition are authenticated by oath of the declarant, they are held admissible. In such cases the entries should be made by persons having knowledge of the facts, or in those cases where two or more persons have combined in making the entry, one or more reporting the fact and another writing it down, the entrant may testify to its correctness. See Greenleaf on Evidence (16th Ed.) p. 206; Underwood v. Parrott, 2 Tex. 168. And the courts holding books are admissible, even though the entrant is alive, require the living person who made the entry be called, or his deposition taken. Chaffee v. United States Book, 18 Wall. 516, 21 L. Ed. 908. It is sufficient if he then states the entries are correct, and were made in the regular course of business and on the discharge of his duty, and entered at the time they purport to have been made. Shove v. Wiley, 18 Pick. (Mass.) 558; Moots v. State,

21 Ohio St. 653. The most satisfactory discussion of this class of evidence that we have been able to find is by Judge Fisher in Railway Co. v. Startz, 94 S. W. 207, where the authorities are collected and reviewed. If the witness Le .Bow had used the account sales to refresh his memory and testified to their correctness, we doubt not but the account sales would have been admissible. If the bookkeeper making the entry had testified to the correctness of the items and their entry in the course of his duty at the time the facts occurred, and in the regular course of business, the entries themselves would be admissible, and especially would this be true if the salesman and bookkeeper used the account sales to refresh their memory, and testified to its correctness. Startz Case, supra. In this case the salesman testified as to the correctness of the weights. If he had testified, as did the witness Overstreet in the Startz Case, there would have been no error in admitting the account sales, perhaps. But in this case the witness discloses he did not make the entries, but they were made by another. Just how and when they were made is not shown—whether from the personal knowledge of the entrant, or from reports to him by the salesman or weigher; whether from oral statements, or from tickets furnished. And there is no testimony as to the correctness of the account sales or unloading certificate, only that it is a correct copy, presumably of the original entries. We believe the court was in error in admitting in evidence the account sales and the unloading certificate.

Assignments 5 and 6 present no reversible error, and will be overruled.

The judgment as to the receiver, Schaff, will be reversed and remanded, but affirmed as to the Wichita Valley Railway Company, not appealing, and there are no cross-assignments as to the judgment in its favor.

⊚⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes