## GORMAN v. JEFFERSON STANDARD LIFE INS. CO. (No. 2507.)

(Court of Civil Appeals of Texas. Amarillo. May 27, 1925. Rehearing Denied June 24, 1925.)

1. **Insurance** &#8258;250(1)—**Statute as to misrepresentations held inapplicable to policies issued after specified date.**

Vernon's Sayles' Ann. Civ. St. 1914, arts. 4947–4951, requiring misrepresentations in securing insurance policy to be material to make policy void, but providing that this shall not apply if policy contains clause making it incontestable after 2 years, *held* not to apply to policies issued after December 31, 1909, in view of articles 4741 and 4959.

2. **Insurance** &#8258;256(2) — **Misrepresentations intentionally made held fraudulent; "absence of fraud."**

Misrepresentations by insured, intentionally made as inducement to issuance of policy, were not made "in absence of fraud," within meaning of Vernon's Sayles' Ann. Civ. St. 1914, art. 4741, and were therefore material and might defeat recovery, notwithstanding article 4959.

3. **Evidence** &#8258;471(2) — **Testimony of chief medical examiner for insurance company that, but for misrepresentations, application would have been refused, not inadmissible as opinion.**

In action on policy, where defense was misrepresentation of insured in application and beneficiary claimed that insurer would have issued policy, notwithstanding fact misrepresented, testimony of chief medical examiner of insurer that, on answer of insured showing true facts, he would have rejected application, *held* not inadmissible, on ground that it called for an opinion.

4. **Appeal and error** &#8258;931(6)—**Admission of evidence in case tried to court harmless, when other evidence sufficient.**

In action on policy tried without jury, where there was sufficient evidence, aside from testimony of insurer's medical examiner that he would have refused application except for insured's misrepresentation, the admission of his testimony was not reversible error; it being presumed that it was not considered.

5. **Insurance** &#8258;153—**Evidence of custom not applicable to facts properly excluded.**

In action on life policy, defended on ground of misrepresentations, evidence offered to prove

general custom to issue policies to applicant in good health despite medical or surgical treatment within 5 years *held* properly excluded when it did not show any general custom to issue policies despite such treatment within 5 years, or to issue policies where such treatment was had within 18 months, and continued until insured's death, as in the case involved, or refer to particular ailments involved, or show that defendant was a party to such custom.

**6. Insurance ☜291(1) — Misrepresentations concerning previous health are material, where company might reasonably have refused policy, or charged higher rate.**

Misrepresentations of fact concerning previous health and medical and surgical treatment of applicant are material to the risk, if insurance company, with knowledge of truth, might reasonably have refused to issue policy, or charged higher rate for the risk.

Appeal from District Court, Wichita County; E. W. Napier, Judge.

Suit by Nellie Gorman against the Jefferson Standard Life Insurance Company. Judgment for defendant, and plaintiff appeals. Affirmed.

Watkins & Walsh, of Wichita Falls, for appellant.

Carrigan, Montgomery, Britain, Morgan & King, of Wichita Falls, for appellee.

JACKSON, J. This suit was instituted in the district court of Wichita county, Tex., by Nellie Gorman, appellant, joined pro forma by her husband, against the Jefferson Standard Life Insurance Company, appellee, to recover on a policy of life insurance issued by appellee to Katherine E. McGee, hereinafter called deceased, in the sum of $2,000, payable to appellant, upon receipt of proof of the death of the insured by appellee.

Appellant properly pleaded her cause of action, showing that on January 13, 1923, appellee delivered to deceased, a single woman, the policy sued on, setting up the terms thereof, the payment of the premium, and the death of the deceased, Katherine E. McGee, on March 25, 1923.

Appellee answered by general demurrer, general denial, admitted the issuance and delivery of the policy, but pleaded that the deceased made application to it for a life insurance policy in the sum of $2,000, on what is known as the ordinary life plan, which application was in writing, and, as an inducement to the issuance of the policy, answered certain questions propounded to her by the medical examiner of appellee and contained in said application relating to her health, both past and present; that in said application she agreed for herself and for every person who should have or claim any interest in any insurance secured by virtue of said application; that she had carefully read each and all of the answers as written and made by her; that they are full, complete, and true, and she was a proper subject for life insurance, and that said representations and answers were made to obtain the insurance, and that she agreed that each and every statement and representation made therein was material, and that the company, believing them to be true, would act upon them; that the answers made by the deceased to certain questions in said application, all of which are set out in appellee's pleading, were misrepresentations, were false and untrue, were made for the purpose of inducing appellee to issue the policy, all of which was known to the deceased, and that such misrepresentations, false and untrue statements, were relied on by appellee, were material, were important and necessary in considering and passing upon the application for the insurance, and that the policy was obtained by such false and fraudulent statements and representations, and but for which appellee would not have issued and delivered the policy, and, by reason thereof, appellee is not liable. It tendered the premium paid, and asked a cancellation of the policy.

Appellant, by supplemental petition, pleaded general denial, and also alleged that, if it was true that the deceased had been disabled or received medical or surgical attention within the past 5 years previous to her application, the failure to disclose such disability or medical or surgical attention was wholly immaterial, because, had such fact been revealed, the appellee, under the circumstances, would have nevertheless issued the policy.

Appellant also alleged that it was a general custom among insurance companies in the United States, and especially in that part of the country, to accept applications for insurance where the applicant had theretofore been disabled and received medical or surgical attention within the 5 years next preceding the application for insurance, and that defendant was a party to such custom, and, had the disability and medical and surgical attention received by the deceased been disclosed to appellee, it would, in pursuance to the said custom, have issued the insurance.

The case was submitted to the court, without the intervention of a jury, and, at the conclusion of the trial, judgment was rendered in favor of appellee, and that plaintiff take nothing by her suit.

The court filed findings of fact which are in substance as follows: The policy issued to the deceased was dated January 13, 1923, in pursuance to an application therefor bearing the same date, and that she died about March 23, 1923; that, in answer to questions in the application, deceased stated she had not been disabled or received injuries or medical or surgical attention within the past five years, and was sound mentally and physically and free from any infirmity or deformity;

that she had not suffered from any ailment or disease of the heart, lungs, pleuræ, chest, liver, kidneys, or bladder, nor undergone a surgical operation, nor been' a patient in a hospital, sanitarium or asylum, and had not consulted a physician regarding any ailment or disease not included in her answers; that she agreed in said application, for herself and any person who might have or claim an interest in the insurance secured on said application, that every statement and representation contained therein was material and true; that she had carefully read all of her answers; that they were written as she had made them; that they were full, complete, and true, and she was a proper subject for life insurance; that each and all of the statements, representations, and answers were made by her to obtain the insurance; that she understood and agreed that they were all material to the risk; and that the company, believing them to be true, would rely and act on them.

The court found that the policy issued on said application contained the clause making it incontestable for any cause, except nonpayment of premium after it had been in force for one year, and that the policy and application were attached together and constituted the entire contract, as well as the other provisions required by our statutes.

He also finds that, about 18 months prior to the application, the deceased had been a patient in the Wichita General Hospital; that she had been disabled, and received medical and surgical attention within the past 5 years preceding the date of the application, and had suffered from an ailment or disease of the lungs, pleuræ, and chest, and had consulted physicians for menstrual disorders and misplaced uterus; that, about 18 months prior to the application, she had a severe attack of bronchial pneumonia, and a few weeks later was operated on for mastoiditis; and that she was visited by physicians several times after she had the bronchial pneumonia and mastoiditis and to the time of her death, and advised with physicians more times than they visited her. He finds as a fact that the foregoing misrepresentations were intended, and were material to the risk assumed. He then finds that the deceased had fully recovered from the effects of the attack of pneumonia and the operation for mastoiditis, and was in sound health mentally and physically, and free from any infirmity or deformity at the time of the application for, and the delivery of, the policy.

[1] Appellant, by her first proposition, based on proper assignments, challenges the correctness of the action of the trial court in rendering judgment against her, and asserts that a misrepresentation in an application for life insurance to be material to the risk assumed must be one which actually contributes to the contingency upon which the policy becomes due and payable.

Appellee replies thereto with a counter proposition that the policy contained a clause declaring it to be incontestable after 1 year from the date of the issue, and articles 4947 to 4951, V. S. C. S., have no application.

In 1903 the Legislature enacted articles 4947 to 4951 of V. S. C. S., and article 4947 provides, in substance, that any provision in a policy of insurance contracted for in this state, which provides that the answers or statements made in the application for such insurance, if untrue or false, shall render the policy void or voidable, shall be of no effect, and constitute no defense to a suit brought upon such insurance policy—

"unless it be shown upon the trial thereof that the matter or thing misrepresented was material to the risk or actually contributed to the contingency or event on which said policy became due and payable, and whether it was material and so contributed in any case shall be a question of fact to be determined by the court or jury trying such case."

Article 4951, referring to the articles preceding, one of which is article 4947, among other things, provides:

"The provisions of the foregoing articles shall not apply to policies of life insurance in which there is a clause making such policy indisputable after two years or less, provided premiums are duly paid."

The policy issued by appellee in the instant case provides that after one year it shall be incontestable for any cause, except nonpayment of premium, and the deceased died within the year, consequently, if these articles control, appellee's defense, based on fraud and misrepresentations, would not be affected or limited by the provisions thereof.

In Wright v. Federal Life Ins. Co., 248 S. W. 325, Presiding Judge Gallagher of section A of the Commission of Appeals, in considering the effect of these articles on a policy issued in 1915, says:

"Articles 4947, 4948, and 4951 of the Revised Statutes are taken bodily from chapter 69 of the Acts of the Twenty-Eighth Legislature (General Laws of Texas 1903, p. 94). By the express terms of said article 4951 none of said articles apply to policies containing a provision making the same incontestable after two years or less, provided premiums are paid. The policy sued on contains such a provision and complies with all the requirements prescribed by said article. None of said articles apply in determining the issues in this case. Blackstone v. Kansas City Life Ins. Co., 107 Tex. 102, 103, 104, 174 S. W. 821."

However, in Guarantee Life Insurance Co. v. Evert, 178 S. W. 643, on motion for rehearing, on page 648 the Court of Civil Appeals at Fort Worth, speaking through Judge Dunklin, says:

"Article 4741 omits the words 'after December 31, 1909.' Doubtless the omission of those words in the Revised Statutes of 1911 was by reason of the fact that the date thus omitted

had already passed at the time of the adoption of the codification of the statutes in the year 1911. The same words are contained in section 23, which are likewise omitted in article 4742 of our-present statutes, doubtless for the same reason. The regular session of the Thirty-First Legislature, at which the act of 1909 was passed, adjourned March 13, 1909, and that act took effect 90 days after that date, which would be June 13, 1909. As noted already, the policies in the case of Blackstone v. Kansas City Life Ins. Co., supra, were issued June 23, 1909, hence they were not required to contain the provisions of article 4741. The provision in the Act of 1909 that the requirements of article 4741 should apply only to policies issued after December 31, 1909, clearly indicates an intention of the Legislature that the articles of the statutes (4947 to 4951) which were passed in the year 1903 should be applicable to policies issued prior to December 31, 1909, and while those statutes were in force, but that the provisions of the act of 1909 should have a controlling effect upon all policies issued after that date."

In this case the Supreme Court refused a writ of error. 185 S. W. xv. Each of these decisions passed the supervision of the Supreme Court, but as we are unable to harmonize, on principle, the divergent holdings reflected by these opinions, we have adopted the construction which to us appears to be based on the better reasoning.

Article 4951, passed in 1903, exempted all insurance companies from the provisions of articles 4947 and 4948, provided the life insurance policy issued and sought to be enforced contained the clause making it incontestable for any cause after 2 years or less, provided the premiums had been paid. Consequently it was left to the choice of each company whether it would avoid the limitations found in articles 4947 and 4948 by inserting the incontestable clause in its policy, or become subject to such limitations by omitting the incontestable clause from the policy.

In 1909 the Legislature enacted article 4741 which provides that no policy of life insurance shall be issued or delivered in this state unless it shall contain:

"A provision that the policy, or policy and application, shall constitute the entire contract between the parties and shall be incontestable not later than two years from its date, except for nonpayment of premiums."

After this article became effective, it was no longer left to the option or election of the insurance companies whether or not they would insert the incontestable clause in their life insurance policies, but was made mandatory.

Article 4741 also provides that all life insurance policies shall contain:

"A provision that all statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties."

Article 4959, which is section 68 of the Acts of 1909, p. 215, provides:

"No recovery upon any life, accident or health insurance policy shall ever be defeated because of any misrepresentation in the application which is of an immaterial fact and which does not affect the risks assumed."

We conclude, therefore, that the correct ruling is made in the case of Guarantee Life Insurance Co. v. Evert, supra, and that the articles of the statute 4947 to 4951 are not applicable to policies issued after December 31, 1909, but the law as found in the act of 1909 is controlling.

The court found as a fact that the misrepresentations made by the deceased were material to the risk assumed, but appellant insists that, to be material, such representations must actually contribute to the contingency upon which the policy becomes due and payable.

It has been determined that the language, "material to the risk," as used in an insurance policy, means such a representation as would induce the insurance company to decline the insurance altogether or demand the payment of a higher premium.

In Supreme Ruling of Fraternal Mystic Circle v. Hansen (Tex. Civ. App.) 153 S. W. 351, in which a writ of error was refused, the court defines "material to the risk", to be:

"Any fact concerning the health, condition, or physical history of the applicant, which would naturally have influenced the insurance association in determining whether or not it would issue the certificate or grant his petition for reinstatement."

In Indiana & Ohio Livestock Ins. Co. v. Smith (Tex. Civ. App.) 157 S. W. 755, the court says:

"The expression 'material to the risk' is not equivalent to 'increasing the risk,' but necessarily means the making of some representation or misstatement of some fact which induces or causes the insurance company to assume the risk."

In St. Paul Fire & Marine Ins. Co. v. Huff (Tex. Civ. App.) 172 S. W. 755, the court says:

"Generally stated, a fact would be material to the insurance risk which would induce the insurance company to decline the insurance altogether, or not to accept it unless at a higher premium."

The test of materiality of representations, Joyce on the Law of Insurance, vol. 3, par. 1892, is:

"Did the fact or circumstance represented or misrepresented operate to induce the insurer to accept the risk or to accept it at a less premium? If it offers a false inducement which is acted upon in either case, the insurer being misled or deceived, the representation is material. And this is so if the truth would have disclosed

a fact increasing or materially changing the risk as understood and agreed upon to be taken, or if, had the truth been known, the insurer would have materially modified the terms of the contract, or have rejected the risk or charged a higher premium, or if the representation was calculated to mislead and does mislead; it being assumed, however, that the insurer is governed by the rules governing prudent and intelligent underwriters in practice in like cases."

See, also, Briefs of the Laws of Insurance, Cooley Supp. vol. 6, pp. 640, 641; Modern Brotherhood of America v. Jordan (Tex. Civ. App.) 167 S. W. 794; Missouri State Life Ins. Co. v. Dossett (Tex. Civ. App.) 265 S. W. 254; Franklin Life Ins. v. Dossett (Tex. Civ. App.) 265 S. W. 259; Columbia Ins. Co. v. Lawrence, 10 Pet. 507, 9 L. Ed. 512.

The interpretation announced by the foregoing authorities, in our opinion, is correct and conclusive against the contention of appellant.

[2] Article 4741 of our statutes also provides that no policy of life insurance shall be issued in this state, unless it contain:

"A provision that all statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties."

The policy in controversy contained this provision, the appellee pleaded fraud, and the court found that the representations were untrue, were intentionally made, and material to the risk assumed, certainly the language in this provision of the statute, "in the absence of fraud" makes a distinction between misrepresentations innocently made and misrepresentations intentionally made.

The court's finding that the misrepresentations were intentionally made is supported by the testimony, and, if intentionally made, they were not made "in the absence of fraud," but were made as an inducement to the issuance of the policy, and were therefore material, and appellee would not be prohibited from defeating a recovery on the policy by the provisions of article 4959 of V. S. C. S. Kennedy v. Prudential Life Ins. Co., 177 Ill. App. p. 50.

[3, 4] Appellant, in her fourth and fifth propositions, based on assignments, urges as error the action of the trial court in permitting the chief medical examiner of appellant to testify that, had the answers of the deceased shown the true facts, he would have rejected the application for insurance, because such testimony was inadmissible, and especially so where it was not shown that the deceased knew the statements to be misrepresentations.

The court's finding that the misrepresentations were intentional precludes the contention of the ignorance of the deceased thereof, and appellant pleaded that, if the true facts had been known and disclosed by the answers of the deceased in the application, appellee would have nevertheless issued the policy in accordance with a general custom prevailing among insurance companies, to which appellee was a party. Appellant had thus, by her leadings, directly presented the issue that appellant would have, notwithstanding the facts, had they been known to it, issued the policy. If this testimony was not admissible, how would the issue thus tendered have been met by appellant? This witness had the approval of the application of deceased for insurance, and the objection was that the question was incompetent and called for an opinion; there being no objection as to the qualification of the witness to testify. In our opinion, in the light of this record, this testimony was admissible.

However, there was sufficient evidence, aside from the testimony of this witness, to have warranted the court in concluding that appellant would not have issued the policy on the terms it did, had it been made acquainted with the facts relative to deceased's previous health and condition, and it is settled by an unbroken line of decisions in this state that, in a case tried before the court, the admission of improper testimony is not reversible error; it being presumed that such evidence was not considered by the court if his judgment can be sustained on other testimony in the record. I. & G. N. Ry. Co. et al. v. Startz, 97 Tex. 167, 77 S. W. 1; Lawther Grain Co. v. Winniford (Tex. Com. App.) 249 S. W. 195; International Travelers' Association v. Melaun (Tex. Civ. App.) 270 S. W. 246.

[5] Appellant, by her third proposition relating to proper assignments, urges as error the action of the trial court in refusing to permit her to prove by the testimony offered that it was a general custom among insurance companies, where the application discloses the applicant to be in good health at the date of the application, to issue policies of life insurance to such applicant, although within 5 years prior thereto such applicant had received medical or surgical treatment.

The testimony offered did not prove a general custom of insurance companies relative to the issuance of life insurance policies where the applicant had within 5 years suffered from some sickness or surgical operation, nor did it tend to show that such is the custom among insurance companies when the sickness of, and the surgical operation upon, the applicant had been undergone within 18 months of the date of the application, and treatment of and visits to the applicant by physicians had continued to the time of the death of the applicant. It did not tend to show that appellee was a party to any such custom nor did the questions propounded present the ailments with which the deceased had been afflicted, nor the time at which she had suffered such illness, and in our opinion, the exclusion of the testimony offered was not error.

[6] The only other question presented to

this court for review is contained in the proposition that misrepresentations of fact concerning the previous health and medical and surgical treatment of an applicant is not material to the risk assumed where a reasonably prudent person would have issued the policy had such facts been disclosed.

What has already been said disposes of this contention. The rule is that a misrepresentation is material if the insurance company, with knowledge of the truth, might reasonably have refused to issue the policy or have charged a higher rate for the risk.

Finding no error in the record, the judgment is affirmed.